FILED

AUG 08 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. CC 15-1442-DKuF |
| JESUS BENCOMO, | Bk Case No. 2:13-bk-11245-BR |
| Debtor. | |
| JESUS BENCOMO, | |
| Appellant, | |
| v. | **MEMORANDUM**[1] |
| WESLEY HOWARD AVERY, Chapter 7 Trustee, | |
| Appellee. | |

Submitted on July 28, 2016
at Pasadena, California

Filed - August 8, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:     Glenn Ward Calsada argued for Appellant; Georgeann Nicol argued for Appellee.

Before: DUNN, KURTZ, and FARIS, Bankruptcy Judges.

---

    [1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

The appellant debtor Jesus Bencomo ("Mr. Bencomo") appeals the bankruptcy court's order granting the chapter 7[2] trustee's motion for turnover of $100,000 that Mr. Bencomo received from the trustee for his homestead exemption but failed to reinvest in a new homestead within the reinvestment period required under California law, as argued by the trustee. We AFFIRM in part and VACATE and REMAND for further findings and conclusions consistent with this decision.

## Factual Background

This is Mr. Bencomo's second appeal to this Panel. In BAP No. CC-14-1361-TaPaKi (the "Prior Appeal"), he appealed the bankruptcy court's judgment denying his discharge under § 727(a)(4)(A) for having knowingly and fraudulently misrepresented, i.e., "severely undervalued," his residence property (the "Property") in his schedules under penalty of perjury. The Panel vacated the judgment denying Mr. Bencomo's discharge and remanded the adversary proceeding for the bankruptcy court to make further findings concerning Mr. Bencomo's evidentiary objections to the testimony of the trustee's realtor witness. See Bencomo v. Avery (In re Bencomo), No. CC-14-1361-TaPaKi, 2015 WL 3451546 (9th Cir. BAP June 1, 2015). Following remand, the bankruptcy court entered further findings of fact and conclusions of law with respect to Mr. Bencomo's evidentiary objections and reiterated its decision

---

[2] Unless otherwise specified, all chapter and section references are to the federal Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

2

to deny him a discharge under § 727(a)(4)(A). That decision has not been appealed and is now final.[3] We refer to facts referenced in the Prior Appeal Memorandum only to the extent necessary to provide context for the present appeal.

Mr. Bencomo filed his chapter 7 petition on January 6, 2013. Wesley H. Avery, the appellee herein, was duly appointed as the chapter 7 trustee ("Trustee"). In an amended Schedule C, Mr. Bencomo claimed a $100,000 homestead exemption in the Property under California Code of Civil Procedure ("CCP") §§ 704.710, 704.720 and 704.730. The Trustee never objected to Mr. Bencomo's amended homestead exemption claim.

Ultimately, the Trustee noticed a sale of the Property, "as is," free and clear of liens under § 363 for $345,500. Mr. Bencomo objected to the sale. Following a hearing, the bankruptcy court overruled Mr. Bencomo's objections and approved the sale of the Property as noticed.

The Property sale closed, and on November 11, 2014, the Trustee tendered a $100,000 check for Mr. Bencomo's homestead exemption to Mr. Bencomo's counsel. The check was negotiated on November 20, 2014. There is no dispute between the parties that Mr. Bencomo "actually received" the $100,000 homestead exemption funds on or about November 20, 2014. Thereafter, Mr. Bencomo spent part or all of the homestead exemption funds for rent under

---

[3] We have exercised our discretion to take judicial notice of relevant documents electronically filed in the adversary proceeding and in Mr. Bencomo's main chapter 7 case to the extent not included in Mr. Bencomo's excerpts of record. See, e.g., Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

3

a one-year lease and "for necessary living expenses, to pay bills and to invest in his business." Appellant's Opening Brief, at 9.

On September 17, 2015, counsel for the Trustee emailed counsel for Mr. Bencomo requesting proof that Mr. Bencomo had invested the $100,000 homestead exemption funds in a new homestead. If no such investment had been made, Trustee's counsel demanded that the $100,000 be turned over to the Trustee. Mr. Bencomo's counsel responded by email, arguing that Mr. Bencomo was not required to turn over the $100,000 homestead exemption funds because in the circumstances of the Property sale under § 363, the Ninth Circuit's decision in Wolfe v. Jacobson (In re Jacobson), 676 F.3d 1193 (9th Cir. 2012), did not apply. Counsel did offer to forward a check for $17,000 to the Trustee, which he understood would pay the estimated amount required, in addition to the amount previously received from the sale of the Property by the estate, to pay all allowed claims of creditors in full, but not administrative expenses.

Mr. Bencomo's counsel followed up his email by filing preemptive Objections to Trustee's Turnover Demand ("Objections"). In the Objections, Mr. Bencomo argued that he was not required to turn over the homestead exemption funds because the Trustee had not sold the Property through an execution sale, as required under CCP § 704.720(b), but rather through a sale under § 363. Therefore, the six-months reinvestment provision under CCP § 704.720(b) did not apply. He further argued that exempt property is not liable for the payment of prepetition debts or administrative expenses under § 522(c) and (k). However, under protest, and without prejudice as to the

4

defenses raised in the Objections, Mr. Bencomo's counsel tendered $17,000 to the Trustee with a full reservation of rights. Finally, Mr. Bencomo argued that the bankruptcy court's order approving the Property sale contained no reservation of rights to the $100,000 homestead exemption funds, and the Trustee had not provided any notice that he reserved any such rights when the $100,000 was tendered to Mr. Bencomo. Further, the bankruptcy court's own local rules did not impose any use or time restrictions on exempt sale proceeds paid directly to the debtor. Accordingly, he argued that the Trustee should be estopped from asserting any estate rights with respect to the $100,000 now.

On October 28, 2015, the Trustee filed his motion for turnover of the $100,000 ("Turnover Motion"). In the Turnover Motion, the Trustee argued that the decision of the Ninth Circuit in Wolfe v. Jacobson required that if a debtor did not invest exempt proceeds from the forced sale of his or her homestead within six months of receipt, any such proceeds lost their exempt status and should be turned over as estate property.

Mr. Bencomo filed a lengthy opposition ("Opposition") to the Turnover Motion. In the Opposition, he reiterated his argument that the six-months homestead reinvestment provision in CCP § 704.720(b) did not apply because the Trustee did not sell the Property at an execution sale "under this division" but under § 363. By its terms, CCP § 720.704(b) did not apply. He further reiterated his argument that proceeds of exempt property are not liable for the payment of a debtor's prepetition debts or for administrative expenses under § 522(c) and (k). He also argued again that the Trustee was estopped from claiming any rights to

5

the $100,000 homestead exemption funds, as the Property sale order had not reserved any rights to those funds for the estate, and the bankruptcy court's own local rules do not impose any use or time restrictions on exempt sale proceeds. The Opposition did raise one new argument briefly, namely that debtors, such as Mr. Bencomo, who invest exempt homestead sale proceeds in leaseholds are entitled to claim a continuing homestead exemption under CCP §§ 704.740 and 704.820.

In his reply ("Reply"), the Trustee argued that, in spite of Mr. Bencomo's protestations, he elected to use the California state statutory scheme, including CCP § 704.720, to claim his homestead exemption, and he admittedly did not reinvest the $100,000 in a homestead within the required six-months reinvestment period under CCP § 704.720(b). Consequently, the funds lost their exempt status and became property of the estate subject to turnover. The Trustee further argued that Mr. Bencomo opposed the Trustee's sale of the Property "at every turn by his counsel, thus making the sale a forced sale." In such circumstances, under Ninth Circuit authority, the six-months reinvestment requirement following receipt of the homestead sale proceeds applied. The Trustee also argued that he had no obligation to advise Mr. Bencomo of any conditional right to claim the $100,000 unless and until the funds were not reinvested in a homestead and lost their exempt status. Finally, the Trustee argued that § 522(c) and (k) did not apply because Mr. Bencomo had claimed his homestead exemption under the "opt out" California state law exemption provisions rather than under federal law. The Trustee did not address Mr. Bencomo's argument

6

that the homestead exemption reinvestment requirement, if found to be applicable, should apply to rent payments under his one-year lease.

The bankruptcy court heard argument on the Turnover Motion at a hearing ("Hearing") on December 1, 2015. Mr. Bencomo's counsel began his argument by focusing on the point that the Trustee's § 363 sale of the Property was not an execution sale for purposes of CCP § 704.720(b). However, the bankruptcy court reminded him that state law and bankruptcy procedures are not necessarily going to align.

> THE COURT: Well, by the way, you know, this is – you know, it's never going to be a perfect match. You know, you have that California has opted out of the federal system, so you have the state exemptions, in this, the homestead. And it's not a perfect match because the Trustee gets the rights, basically, of a judgment lien, a creditor. So you're never going to get the exact match because you always have a trustee. You don't have a, you know, a –
>
> MR. CALSADA: Yes, your honor. That's true.
>
> THE COURT: – creditor doing it.

Hr'g Tr. Dec. 1, 2015, at 5:14-23.

The bankruptcy court then confirmed that Mr. Bencomo claimed his homestead exemption under California state law and did not object to the Property sale on the basis that it did not satisfy the procedures for an execution sale under California law. While Mr. Bencomo's counsel pressed on, the bankruptcy court did not accept the argument that the Trustee was under any obligation to advise Mr. Bencomo that the estate claimed a contingent interest in the $100,000 if the funds were not reinvested in a homestead by the statutory deadline. And counsel for Mr. Bencomo agreed that the purpose of the reinvestment deadline was to give the

7

debtor an opportunity to reinvest in another homestead. Unconvinced by the arguments of Mr. Bencomo's counsel, the bankruptcy court stated its intent to grant the Turnover Motion.

At that point, Mr. Bencomo's counsel interjected to assert that the bankruptcy court had not addressed "the issues with respect to whether or not funds that were used for a lease as an acquisition of a homestead within the time frame, or whether or not Section 522(c) and 522(k) applie[d]." Hr'g Tr. Dec. 1, 2015, at 22:1-4. The bankruptcy court responded, "No, I didn't address them because those don't apply whatsoever." Hr'g Tr. Dec. 1, 2015, at 22:5-6. The bankruptcy court went on to explain that § 522(c) and (k) do not apply with respect to assets that are no longer exempt. It did not directly address the argument that payments of leasehold rent could qualify as reinvestment in a homestead.

Finally, Mr. Bencomo's counsel requested that the bankruptcy court's order granting the Turnover Motion be stayed pending appeal. The bankruptcy court denied the oral stay motion and requested counsel for the trustee to include the denial of stay pending appeal in the order granting the Turnover Motion.

The bankruptcy court entered an order ("Turnover Order") granting the Turnover Motion and denying Mr. Bencomo's counsel's oral motion for stay pending appeal on December 15, 2015. Mr. Bencomo filed a timely appeal.

## Jurisdiction

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A), (E) and (O). We have jurisdiction under 28 U.S.C. § 158.

8

## Issues

In his opening brief, Mr. Bencomo articulates twelve issues for review in this appeal that we distill down to the following five:

1) Whether the bankruptcy court erred procedurally in considering and granting the Turnover Motion.

2) Whether the bankruptcy court erred in applying the six-months reinvestment requirement in CCP § 704.720(b), applicable to execution sales.

3) Whether the bankruptcy court erred in overruling Mr. Bencomo's objection that "exempt" sale proceeds are not liable for prepetition debts or administrative expenses under § 522(c) and (k) without the debtor's consent.

4) Whether the bankruptcy court erred in disregarding Mr. Bencomo's objections that the Property sale order and the bankruptcy court's own local rules did not provide for any reservation of estate rights with respect to sold assets, and the Trustee never advised Mr. Bencomo that the Trustee claimed any contingent reversionary interest in the Property sale proceeds.

5) Whether the bankruptcy court erred in disregarding as inapplicable Mr. Bencomo's objection that he reinvested at least some of the Property sale proceeds in a leasehold interest that qualified as a homestead.

## Standards for Review

We review conclusions of law de novo and findings of fact for clear error. Wolfe v. Jaconson, 676 F.3d at 1198. We review questions regarding a debtor's claimed exemption rights de novo. Kelley v. Locke (In re Kelley), 300 B.R. 11, 16 (9th Cir. BAP

9

2003). De novo means that we consider a matter anew, as if no decision previously had been rendered. Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009).

The bankruptcy court's fact findings, for purposes of determining the validity or continuing validity of a claimed exemption, are reviewed for clear error. Id. Fact findings are clearly erroneous if they are illogical, implausible or without support in inferences that may be drawn from facts in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

We may affirm decisions of the bankruptcy court on any basis supported by the record. Fresno Motors, LLC v. Mercedes-Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2014); Arnot v. Endresen (In re Endresen), 548 B.R. 258, 268 (9th Cir. BAP 2016).

Discussion

I. The bankruptcy court did not err in considering the Turnover Motion.

Mr. Bencomo's first argument is that the bankruptcy court erred in even considering the Turnover Motion. "A turnover action under [§ 542] cannot be used to demand assets whose title is in dispute . . . . [I]t is not intended as a remedy to determine disputed rights to property." Appellant's Opening Brief, at 13. Mr. Bencomo cites two out-of-circuit bankruptcy court decisions for those propositions. See Hechinger Inv. Co. of Del., Inc. v. Allfirst Bank (In re Hechinger Inv. Co. of Del., Inc.), 282 B.R. 149, 161-62 (Bankr. D. Del. 2002); and Lauria v. Titan Sec. Ltd. (In re Lauria), 243 B.R. 705, 708 (Bankr. N.D. Ill. 2000). The Hechinger Investment Co. and Lauria cases are

10

clearly distinguishable from this case.  But suffice it to say that by raising this argument, Mr. Bencomo lays down a red herring.

Section 542(a) provides in relevant part that "an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate."  The term "entity" is defined in § 101(15) to include any "person, estate, trust, governmental unit, and United States trustee."  Obviously, "entity" as defined in the Bankruptcy Code is broad enough to encompass an individual chapter 7 debtor, such as Mr. Bencomo. In fact, Rule 7001(1) underlines that point by requiring the filing of an adversary proceeding "to recover money or property, **other than a proceeding to compel the debtor to deliver property to the trustee** . . . ."  (Emphasis added.)  Accordingly, a proceeding to require a chapter 7 debtor to turn over property to the trustee for the benefit of the estate is appropriately prosecuted by motion.  See Rule 9014(a) ("In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion . . . ."); White v. Brown (In re White), 389 B.R. 693, 699 (9th Cir. BAP 2008) ("As a matter of procedure, a proceeding to compel the debtor to deliver property to the trustee need not be an adversary proceeding and, instead, may be prosecuted by motion"); and Gaughan v. Smith (In re Smith), 342 B.R. 801, 808 (9th Cir. BAP 2006).

11

Mr. Bencomo does not argue that the subject $100,000 in this appeal is "of inconsequential value or benefit to the estate."

A turnover action "invokes the court's most basic equitable powers to gather and manage property of the estate." Braunstein v. McCabe, 571 F.3d 108, 122 (1st Cir. 2009). Resolution of the Turnover Motion did not require the bankruptcy court to resolve disputed legal title. Cash is not an asset to which one takes "title." The dispute in this case is whether $100,000 cash proceeds from the sale of a homestead retained or lost their exempt status over time under the Bankruptcy Code and California exemption law.

As noted in Collier's, "By its express terms, section 542(a) is self-executing, and does not require that the trustee take any action or commence a proceeding or obtain a court order to compel the turnover." 5 Collier on Bankruptcy ¶ 542.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.). However, the multitude of trustee turnover motions that are filed targeting chapter 7 debtors confirms that debtors often dispute their obligations to turn over "their" property claimed as estate assets and that disputes, as in this case, arise as to the availability and scope of exemptions claimed by chapter 7 debtors.

The Turnover Motion was the appropriate procedural vehicle for the Trustee to pursue his claim that Mr. Bencomo's exemption in the $100,000 Property sale proceeds terminated when he did not reinvest the funds in a new homestead by the end of the six-months deadline under CCP § 704.720(b). Mr. Bencomo's contrary argument is devoid of merit.

///

12

II. The bankruptcy court did not err in applying the six-months reinvestment requirement under CCP § 704.720(b) to the $100,000 proceeds from the Property sale received by Mr. Bencomo.

Mr. Bencomo argues that the $100,000 Property sale proceeds that he received retain their exempt status and are not subject to the six-months reinvestment requirement under CCP § 704.720(b) because the Trustee did not sell the Property in an execution sale and did not satisfy the procedural requirements for such a sale under California law. He relies on the terms of the statute:

> CCP § 704.720(b). **If a homestead is sold under this division** or is damaged or destroyed or is acquired for public use, **the proceeds of sale** . . . are exempt in the amount of the homestead exemption provided in Section 704.730. **The proceeds** are exempt for a period of six months after the time the proceeds are actually received by the judgment debtor . . . .

(Emphases added.) Since the Trustee actually sold the Property pursuant to § 363 rather than pursuant to the California law governing execution sales, Mr. Bencomo argues that the six-months reinvestment provision simply does not apply to the exempt proceeds from the Property sale.

Mr. Bencomo misapprehends how the Bankruptcy Code interacts with California exemption law. When a chapter 7 bankruptcy petition is filed, the trustee, as representative of the bankruptcy estate, is vested with the characteristics of a hypothetical judgment lien creditor. Section 544(a)(1) and (2) provide that,

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or any creditor, the rights and powers of . . .
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on

13

> a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; . . . .

Section 101(36) defines "judicial lien" as a "lien obtained by judgment, **levy**, sequestration, **or other legal or equitable process or proceeding.**" (Emphasis added.) In accordance with those provisions, exemption disputes are considered in light of a hypothetical execution sale conducted by the trustee as of the petition date. See, e.g., Harris v. Herman (In re Herman), 120 B.R. 127, 132 (9th Cir. BAP 1990) ("[T]he existence of exemptions in bankruptcy presupposes a hypothetical attempt by the trustee to levy upon and sell all of the debtor's property upon the filing of the petition.").

In other words, with the trustee being presumed hypothetically to have attempted to conduct an execution sale as of the petition date, any actual sale under the Bankruptcy Code thereafter is likewise presumed to have satisfied all of the procedural requirements for such a sale. That conclusion makes sense particularly in light of the trustee's duty to "collect and reduce to money the property of the estate . . . as expeditiously as is compatible with the best interest of parties in interest." § 704(a)(1). The Rules operate with the consistent objective "to secure the just, speedy, and inexpensive determination of every case and proceeding." Rule 1001. It is difficult to imagine a process more antithetical to those goals than requiring a chapter 7 trustee to comply with all state law execution procedures

14

before being able to sell property of the estate, particularly with debtors and lien creditors looking over the trustee's shoulder to make sure that each procedural "i" was dotted and each "t" crossed. Congress did not impose such onerous requirements on the trustee's exercise of his or her responsibilities to liquidate estate assets under the Bankruptcy Code. See, e.g., In re Herman, 120 B.R. at 131-32; 5 Collier on Bankruptcy ¶ 544.04 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.).

California recognizes that reality with respect to application of its exemption laws. CCP § 703.140(a) provides:

> In a case under [the Bankruptcy Code], all of the exemptions provided by this chapter, **including the homestead exemption**, . . . are applicable regardless of whether there is a money judgment against the debtor or whether a money judgment is enforced **by execution sale or any other procedure** . . . .

(Emphases added.) As noted by the bankruptcy court in In re Donaldson, 156 B.R. 51, 53-54 (Bankr. N.D. Cal. 1993),

> The bankruptcy courts can take one of two approaches to adapting state homestead law to bankruptcy proceedings: they can treat a bankruptcy as the equivalent of enforcement of a money judgment under state law, or they can strictly interpret state law and determine that since there is no actual sale by a creditor, there is no applicable exemption. . . . The court in Herman resolved the procedural problems inherent in adapting non-bankruptcy law to bankruptcy situations by making the filing of a bankruptcy petition the functional equivalent of a forced sale by a creditor. This appears to be exactly what the California legislature intended, and avoids the absurd result that a debtor forfeits an exemption by filing a bankruptcy petition.

Mr. Bencomo cites two California Court of Appeal decisions, Spencer v. Lowery, 235 Cal. App. 3d 1636 (1991), and Wells Fargo Financial Leasing v. DM Cabinets, 177 Cal. App. 4th 59 (2009),

15

for the unremarkable proposition that a nonjudicial foreclosure sale and a sale by a court-appointed receiver do not satisfy the procedural requirements for an execution sale for purposes of interpreting exemption statutes under California law.  However, these decisions do not address how California's homestead exemption law is to be interpreted when a bankruptcy intervenes.

We recognize as a given that "'it is the **entire** state law applicable on the filing date that is determinative' of whether an exemption applies." Wolfe v. Jacobson, 676 F.3d at 1199, quoting Zibman v. Tow (In re Zibman), 268 F.3d 298, 304 (5th Cir. 2001) (emphasis in original).  However, following the Ninth Circuit's seminal decision in England v. Golden (In re Golden), 789 F.2d 698 (9th Cir. 1986), in which the circuit held that proceeds from the sale of a homestead lost their exempt status under California law if not reinvested in a new homestead within six months following the sale, this Panel has held consistently that "the sale of a residence by a Chapter 7 trustee is a forced sale within the meaning of the California statutory [exemption] scheme." In re Cole, 93 B.R. 707, 709 (9th Cir. BAP 1988). See, e.g., In re Kelley, 300 B.R. at 17 ("The California Constitution, in Art. XX § 1.5, directs the legislature to protect a portion of homesteaded property from a forced sale.  We have previously determined that the filing of a bankruptcy petition constitutes such a 'forced sale' for these purposes."); Elliott v. Weil (In re Elliott), 523 B.R. 188, 195 (9th Cir. BAP 2014) ("The filing of a bankruptcy petition constitutes such a 'forced sale' to trigger the application of the automatic homestead exemption."); Diaz v. Kosmala (In re Diaz), 547 B.R. 329, 334

16

(9th Cir. BAP 2016) ("The filing of a bankruptcy petition constitutes a forced sale for purposes of the automatic homestead exemption."). These decisions in effect have safeguarded the rights of debtors in bankruptcy to claim the Article 4 "automatic" homestead exemption under California law, subject to its limitations.

In Wolfe v. Jacobson, the Ninth Circuit rejected Herman to the extent it could be interpreted as determining that "the debtor's share of the proceeds from the post-petition sale of his homestead should be permanently exempt." 676 F.3d at 1200. But the circuit did not question Herman's legal conclusion that a bankruptcy filing presumes a hypothetical execution sale by the trustee of a chapter 7 debtor's property when the petition is filed. In fact, in Wolfe v. Jacobson, the Ninth Circuit, focusing as we do here on CCP § 704.720(b), reiterated the holding in Golden that the California automatic exemption statutes "'require[] reinvestment in order to prevent the debtor from squandering the proceeds for nonexempt purposes.'" 676 F.3d at 1200, quoting Golden, 789 F.2d at 700. When the Jacobsons did not reinvest the exempt proceeds from the postpetition execution sale of their residence by a creditor within the six-months period prescribed by CCP § 704.720(b), those proceeds lost their exempt status. Wolfe v. Jacobson, 676 F.3d at 1199. "In this case, **the entire state law includes a reinvestment requirement for the debtor's share of the homestead sale proceeds**. [CCP] § 704.720(b)." Id. (emphasis added).

The Trustee sold the Property postpetition and delivered $100,000 as exempt proceeds from the sale to Mr. Bencomo. The

17

Trustee later argued that Mr. Bencomo did not invest the proceeds in a new homestead within the following six months as required to maintain their exempt status under CCP § 704.720(b) and moved for turnover of the now nonexempt proceeds. The bankruptcy court determined that the six-months reinvestment requirement applied and so held. Based on our analysis of applicable bankruptcy and California state exemption law, we conclude that the bankruptcy court did not err in that determination.

III. Sections 522(c) and (k) do not apply to nonexempt proceeds from the Property sale.

Mr. Bencomo argues that the bankruptcy court erred as a matter of law when it determined that § 522(c) and (k) did not apply to the Property sale proceeds that the Trustee seeks to recover from Mr. Bencomo because they were not reinvested in a homestead within the six-months period required under CCP § 704.720(b). Sections 522(c) and (k) provide respectively that a debtor's exempt property cannot be used to pay prepetition debts or administrative expenses of the bankruptcy case. Mr. Bencomo asserts that for Bankruptcy Code purposes, once an asset, such as the $100,000 Property sale proceeds delivered to Mr. Bencomo, is exempt, it is **permanently** exempt for purposes of § 522 even if such property may later lose its exempt status under state law. See Appellant's Reply Brief, at 10. He cites the First Circuit decision in Pasquina v. Cunningham (In re Cunningham), 513 F.3d 318, 323 (1st Cir. 2008), for that proposition.

Mr. Bencomo's argument ignores the fact that the Ninth Circuit, interpreting CCP § 704.720(b) in Wolfe v. Jacobsen,

18

expressly rejected the argument that once homestead sale proceeds attain exempt status, they are permanently exempt for Bankruptcy Code purposes. 676 F.3d at 1200.

> California has thus determined that if a debtor does not put his proceeds to proper use, they ought to be used to satisfy creditors' claims. Ignoring the reinvestment requirement "would frustrate the objective of the California homestead exemption **and the bankruptcy act itself**, which limits exemptions to [those] provided by state or federal law."

Id., quoting Golden, 789 F.2d at 700 (emphasis added).

In this case, the bankruptcy court concluded that § 522(c) and (k) did not apply to the extent that the Property sale proceeds delivered to Mr. Bencomo lost their exempt status. Consistent with binding Ninth Circuit precedent, we see no error in the bankruptcy court's conclusion.[4]

IV. <u>The Trustee is not estopped to demand turnover of the $100,000 Property sale proceeds delivered to Mr. Bencomo without reservation of rights or notice of a reserved contingent interest</u>.

Mr. Bencomo argues that the Trustee should be estopped from asserting any interest in the $100,000 Property sale proceeds delivered to Mr. Bencomo as exempt because the sale order did not reserve any contingent rights in the proceeds for the estate, and the bankruptcy court's own local rules do not contain any use or time restrictions on exempt proceeds paid to the debtor by a

---

[4] The Trustee points out a further practical problem with Mr. Bencomo's argument. "[T]he Debtor's argument that he does not wish for the Trustee to pay his pre-petition claims from the proceeds that he failed to reinvest is particularly nonsensical since the Debtor lost his discharge due to his false oath and remains liable on all his prepetition claims." Appellee's Responsive Brief, at 21.

19

trustee. See LBR Rule 6007-1(h). Further, the Trustee did not provide any notice to Mr. Bencomo that the estate retained a conditional reversionary interest in the delivered proceeds. In these circumstances, Mr. Bencomo argues it would deny his rights to due process to require turnover of the formerly exempt Property sale proceeds.

Mr. Bencomo's estoppel argument disregards established law in this circuit from the Ninth Circuit's Golden decision forward.

> Golden further contends that, even if proceeds are no longer exempt, the trustee is estopped from claiming them because he did not notify the bankrupt, before the six months expired, that he intended to make such a claim. Because the exemption remained in effect during the six-month period, and the trustee had no right to claim the proceeds during that period, we see no reason for requiring that he notify the debtor of a claim not yet in existence. Given the clarity of provisions requiring reinvestment, Golden could not have reasonably relied upon the trustee's silence as an indication of a permanent exemption.

Golden, 789 F.2d at 701. See, e.g., In re White, 389 B.R. at 701, 705-06; and In re Smith, 342 B.R. at 808:

> At the time the bankruptcy was filed, the estate held a contingent, reversionary interest in the [homestead] sale proceeds. Once Debtors failed to reinvest the proceeds into another homestead within the statutory period, the entire interest reverted to the bankruptcy estate. In other words, the proceeds, stripped of their exempt status, transformed into **nonexempt** property, i.e., property of the bankruptcy estate, by operation of law. At that point, there was no need for the trustee to pursue an objection to the claimed exemption because no such exemption existed. Accordingly, the course of action taken by the trustee, the prosecution of the turnover motion, was proper.

(Emphasis in original.) Mr. Bencomo's estoppel and due process arguments lack merit.

///

///

V. It is not clear whether the Trustee or the bankruptcy court addressed Mr. Bencomo's argument that even if the six-months reinvestment requirement applied, his use of exempt Property sale proceeds to pay rent under a one-year lease satisfied the requirement to reinvest in a homestead.

At the end of the Opposition, in taking what could be characterized as a "fall back" position, Mr. Bencomo argued that even under Wolfe v. Jacobson, his acquisition of a leasehold estate during the six-months reinvestment period under CCP § 704.720(b) qualified as a reinvestment in a homestead, citing CCP §§ 704.740 and 704.820. CCP § 704.740 provides:

> (a) Except as provided in subdivision (b), the interest of a natural person in a dwelling may not be sold under this division to enforce a money judgment except pursuant to a court order for sale obtained under this article and the dwelling exemption shall be determined under this article. (b) **If the dwelling** is personal property or **is real property in which the judgment debtor has a leasehold estate with an unexpired term of less than two years at the time of levy**: (1) A court order for sale is not required and the procedures provided in this article relating to the court order for sale do not apply. (2) An exemption claim shall be made and determined as provided in Article 2 (commencing with Section 703.510).

(Emphasis added.) CCP § 704.820 provides:

> If the dwelling is owned by the judgment debtor as a joint tenant or tenant in common or **if the interest of the judgment debtor in the dwelling is a leasehold or other interest less than a fee interest**: (a) At an execution sale of a dwelling, the interest of the judgment debtor in the dwelling and not the dwelling shall be sold. If there is more than one judgment debtor of the judgment creditor, the interests of the judgment debtors in the dwelling shall be sold together and each of the judgment debtors entitled to a homestead exemption is entitled to apply his or her exemption to his or her own interest. (b) For the purposes of this section, all references in this article to the "dwelling" or "homestead" are deemed to be references to the interest of the judgment debtor in the dwelling or homestead.

(Emphasis added.) The Trustee did not respond to this argument

21

in his Reply.

At the Hearing, Mr. Bencomo's counsel did not raise the issue "with respect to whether or not funds that were used for a lease as an acquisition of a homestead within the [reinvestment] time frame" qualified for homestead exemption protection until the bankruptcy court already had stated that it was prepared to rule in favor of the Trustee. At that time, Mr. Bencomo's counsel also raised his issue about application of § 522(c) and (k). The bankruptcy court responded that "I didn't address [those issues] because those don't apply whatsoever." The bankruptcy court went on to explain its view that § 522(c) and (k) only applied with respect to exempt assets, and the Property sale proceeds received by Mr. Bencomo were no longer exempt. However, the bankruptcy court did not explain its reasoning as to why Mr. Bencomo's use of part of the Property sale proceeds to pay rent for a one-year leasehold in which he resided did not qualify as reinvestment in a homestead.

The Ninth Circuit has recognized, at least under Oregon law, that a debtor's prepaid rent and security deposit for a residential leasehold could qualify for homestead exemption protection. See Sticka v. Casserino (In re Casserino), 379 F.3d 1069 (2004). There is no similar Ninth Circuit authority interpreting California exemption law.

In their briefs in this appeal, the parties cite various statutory provisions from the California Code of Civil Procedure in support of their respective positions but no California appellate decisions that deal directly with the question of whether rent payments under a residential lease with a term of

22

less than two years qualify as reinvestment in a homestead for purposes of CCP § 704.720(b). We conclude that we must vacate the Turnover Order and remand to the bankruptcy court so that it can further consider this particular issue and make findings of fact and conclusions of law that address directly Mr. Bencomo's argument that any payments of rent that he made for a one-year residential leasehold during the reinvestment period qualify for homestead exemption protection under CCP § 704.720(b).

## Conclusion

Based on the foregoing analysis, we VACATE the Turnover Order and REMAND this matter to the bankruptcy court to allow the bankruptcy court to make further findings of fact and conclusions of law on the sole issue of whether Mr. Bencomo's payments of rent for a one-year residential leasehold during the reinvestment period under CCP § 704.720(b) qualify as reinvestment in a homestead. Otherwise, we AFFIRM the rulings of the bankruptcy court on the Trustee's Turnover Motion.

23