In re Ruth E. **HERMAN**, Debtor.

William **HARRIS**, Appellant,

v.

Ruth **HERMAN**, Appellee.

BAP No. CC–89–2171–PMeO.

Bankruptcy No. SB 89–04367 MG.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted on June 25, 1990.

Decided Oct. 24, 1990.

Douglas Johnson, Chino Hills, Cal., for appellant.

Glen Rotner, Upland, Cal., for appellee.

Before PERRIS, MEYERS and OLLASON, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

The debtor sought to avoid judgment· liens on her residence under 11 U.S.C. § 522(f). The judgment creditor contended that California law did not provide for a homestead exemption because the debtor had contracted for the voluntary sale of her residence and therefore the court should not avoid the liens. We affirm the bankruptcy court's order avoiding the liens.

## FACTS

The debtor/appellee, Ruth E. Herman (the "debtor"), owned and resided at real property located in San Bernadino County, California. First and second trust deeds encumbered the residence in the approximate amounts of $30,000 and $60,000. The appellant, William Harris ("Harris") ob-

tained default judgments against the debtor in state court on July 15, 1987, in the amount of $25,054, and on January 19, 1988, in the amount of $11,487.42. Harris recorded abstracts of these judgments in San Bernadino County on July 22, 1987 and February 22, 1988. As of August of 1989, the debtor owed approximately $43,000 on these two judgments, which constituted liens on her real property.

On May 18, 1989, the debtor filed a Chapter 7 petition in which she claimed an exemption in the residence in the amount of $75,000 under the undeclared homestead exemption of Cal.Civ.Proc.Code ("CCP") §§ 704.710, *et seq*. The next day, the debtor entered into a contract to sell the residence for $149,500.

Before the sale closed, the debtor moved to avoid Harris' judgment liens under 11 U.S.C. § 522(f). Harris objected, contending that the undeclared homestead exemption of CCP §§ 704.710 *et seq*. could not apply because the residence was being sold in a voluntary sale. The bankruptcy court ruled that the debtor is allowed a homestead exemption on any net sale proceeds because the sale is considered a forced sale and ordered that the Harris judgment liens be avoided under section 522(f). Harris filed this appeal.

## ISSUE

Whether Harris' judicial liens should be avoided under section 522(f) as liens which impair an otherwise available exemption.

## STANDARD OF REVIEW

The question on appeal involves the construction of section 522(f) and the applicable state homestead exemption. These are questions of law which are reviewed *de novo*. *See In re Taylor*, 73 B.R. 149, 151 (9th Cir. BAP 1987), *aff'd*, 861 F.2d 550 (9th Cir.1988).

## DISCUSSION

Section 522(f) allows a debtor to avoid the fixing of a judicial lien on an interest of the debtor in property to the extent that the lien impairs an otherwise available exemption. *See In re Galvan*, 110 B.R. 446, 449 (9th Cir. BAP 1990). Analysis under section 522(f) involves: (1) determining whether the debtor would have been entitled to claim the exemption in the absence of the lien; and (2) determining the extent to which any available exemption is impaired by the judicial lien. *Id*. at 450.

■ When, as in this case, a state has opted out of the exemption scheme set forth in section 522(d), the extent to which property is exempt is controlled by state law while questions of impairment and lien avoidance under section 522(f) are controlled by federal law. *In re Thornton*, 91 B.R. 913 (Bankr.C.D.Cal.1988); *see Taylor*, 73 B.R. at 151–53. The "automatic" or "undeclared" homestead exemption at issue in this case is set forth in CCP § 704.710 *et seq*.[1] Under the automatic homestead exemption, a dwelling which otherwise qualifies as a homestead under section 704.710(c) is exempt from sale to enforce a money judgment unless the proceeds of such an execution sale are sufficient to pay the amount of all prior liens and encumbrances and the amount of the homestead exemption set forth in section 704.730. *See* sections 704.720 and 704.800.[2] The proceeds of such a sale to enforce a

1. California law also provides a declared homestead exemption as set forth in CCP § 704.910 *et seq*. The debtor also argues that she should prevail on appeal by virtue of a post-petition declaration of homestead. We decline to consider this argument because it was not raised in the court below and because there is no evidence properly in the record concerning a declared homestead.

2. Section 704.720(a) provides that "a homestead is exempt from sale under this division to the extent provided in Section 704.800." Section 704.800(a) provides as follows:

If no bid is received at a sale of a homestead pursuant to a court order for sale that exceeds the amount of the homestead exemption plus any additional amount necessary to satisfy all liens and encumbrances on the property, including but not limited to any attachment or judgment lien, the homestead shall not be sold and shall be released and is not thereafter subject to a court order for sale upon subsequent application by the same judgment creditor for a period of one year.

money judgment are similarly exempt from any execution to the extent of the amount of the homestead exemption, but the proceeds of a voluntary sale of an undeclared homestead are not. Section 704.720(b); *e.g. In re Cole,* 93 B.R. 707, 708–09 (9th Cir. BAP 1988).[3]

Harris contends that the automatic homestead does not apply because the residence is being voluntarily sold and the undeclared homestead exemption does not protect the proceeds of a voluntary sale. The debtor contends, and the bankruptcy court agreed, that the sale at issue should be considered a forced sale for purposes of the exemption statutes.

■ We need not decide whether the post-petition sale should be deemed an execution sale or a voluntary sale because the post-petition sale is irrelevant in determining the exemption. Absent conversion from one chapter to another, the nature and extent of a debtor's exemption rights are determined as of the date of the petition. *In re Seyfert,* 97 B.R. 590 (Bankr.S. D.Cal.1989); *see In re Magallanes,* 96 B.R. 253, 255 (9th Cir. BAP 1988). The petition date is appropriate because the existence of exemptions presupposes a hypothetical attempt by the trustee to levy upon and sell all of the debtor's property upon the filing of the petition. Thus, any post-petition disposition of the property or post-petition change in the identity of the property into

proceeds has no impact upon the exemption analysis. *See In re Whitman,* 106 B.R. 654 (Bankr.S.D.Cal.1989); *In re Seyfert, supra; In re Sherwood,* 94 B.R. 679 (Bankr.E.D.Cal.1988).

■ In this case, if execution had issued against the residence on the date of the petition, the debtor would have been entitled to assert the automatic homestead exemption to protect her interest in the residence. The limitation upon the exemption of any proceeds from a subsequent sale of the residence is not relevant.

This reasoning is consistent with bankruptcy's fresh start purposes. A debtor undergoes the significant detriments[4] inherent in filing bankruptcy in exchange for protection from certain creditors and a "fresh start." The ability to exempt property and avoid certain liens on exempt property is intended to facilitate the fresh start. *See Galvan,* 110 B.R. at 449–51. If a judgment creditor were allowed to use post-petition events to defeat an exemption or defeat an attempt to avoid a judicial lien under section 522(f), the fresh start purposes of the Code would be significantly eroded. Furthermore, this reasoning does not conflict with the holding of prevailing Ninth Circuit authority such as *In re Cole, supra,* and *In re Golden,* 789 F.2d 698 (9th Cir.1986), neither of which specifically discuss the relevant date for determining the existence of a homestead exemption.[5] Al-

---

3. By way of contrast, proceeds from the voluntary sale of a declared homestead are exempt in the amount provided by section 704.730 for a period of six months. Section 704.960.

4. For example, by filing a Chapter 7 petition, as in this case, the debtor subjects all of his or her non-exempt assets to collection, liquidation and distribution to unsecured creditors, including creditors holding judicial liens that have been avoided.

5. In *Golden* the court determined that a debtor lost his exemption in the proceeds of a pre-petition sale of his residence when he did not reinvest the proceeds in another homestead within six months. *Golden* is distinguishable because the debtor in that case held proceeds on the date of filing rather than an interest in the residence. The court looked to the exemption in proceeds existing at the date of the petition and the affirmative requirement that those proceeds be

reinvested in order for the exemption to continue beyond six months. In this case, the homestead exemption existing at the date of the petition was not limited by such a requirement of affirmative action for its continuing validity.

*Cole* reversed the bankruptcy court's denial of an uncontested claim of exemption by determining that a post-petition sale of an undeclared homestead by a Chapter 11 debtor-in-possession was an involuntary sale of the homestead and that the proceeds were therefore exempt. In reaching this result the Panel, similarly to the lower court in *Cole,* examined the exemption of proceeds arising post-petition rather than the exemption of the interest of the debtor in the homestead as of the date of the petition. Although this may implicitly support the proceeds analysis suggested by the parties in this case, *Cole* did not address the effect of examining the exemption as of the date of the petition, nor does its holding preclude such an examination.

though this reasoning is arguably inconsistent with *In re Knudsen*, 80 B.R. 193 (Bankr.C.D.Cal.1987), we find *Knudsen* internally inconsistent in the sense that it recognizes that exemptions are determined as of the date of the petition and that post-petition changes are not relevant, yet it goes on to deny the debtor's claim of exemption on the basis of the post-petition sale of the homestead. *See* 80 B.R. at 196.

■ As of the date of the petition, a judgment creditor could not have forced the execution sale of the residence unless the proceeds were sufficient to pay the debtor her $75,000 homestead exemption. The debtor's interest in the residence is therefore exempt to that extent. Because the $75,000 statutory exemption exceeds the $60,000 equity in the property, the "available exemption" for purposes of section 522(f) analysis is $60,000.[6]

Turning to whether and to what extent Harris' liens impair the available exemption, Harris makes two related arguments. The first is that the protection afforded the debtor by the automatic homestead exemption arises only upon a sale of the property to enforce a money judgment. Since there is and can be no execution sale, Harris argues that his liens cannot impair an available exemption. The second argument is that the judicial liens cannot impair the debtor's exemption under state law because under section 704.800 he cannot enforce his judicial liens against the property until there is sufficient value in the property to allow the debtor to enjoy her entire exemption. We are not persuaded by either argument.

In *Galvan, supra,* we determined that section 522(f) may be used by a debtor to avoid an undersecured judicial lien. We reasoned that although the unsecured portion could not, at that time, be enforced against the exempt property so as to provide immediate economic benefit, allowing the unsecured portion of a judicial lien to

remain as a charge against the property in which the debtor has exemption rights impaired the debtor's exemption rights and the debtor's right to a fresh start in various ways. 110 B.R. at 451. First, if the debtor's interest in the property were sold after bankruptcy, a buyer would require that the judicial liens be satisfied at closing or would reduce the amount paid by the amount of the judicial liens which encumber the property. In this manner, the judicial liens would preclude the debtor from obtaining the full potential value of his or her homestead after bankruptcy. *See id.* (citing *In re Charles*, 25 B.R. 331, 333 (9th Cir. BAP 1982). In addition, allowing such a judicial lien to remain and be enforced sometime in the future would allow the creditor, rather than the debtor, to reap the benefits of post-petition property appreciation and equity build-up. *Id.* Such a result is contrary to the fresh start purposes served by section 522(f).

■ The lesson of *Galvan* is that the concept of impairment for purposes of section 522(f) should not be construed restrictively. Rather impairment should be construed in a manner consistent with the fresh start purposes served by the applicable Code provisions. In this regard, in determining whether a lien impairs an exemption under section 522(f) we apply a practical approach to determining the impact that a judicial lien may have on the debtor's ability to use a given piece of exempt property to achieve his or her fresh start. Where the creditor's lien has no present economic value, i.e. the exemption plus the encumbrances with priority ahead of the judicial lien at issue equal or exceed the value of the property, the lien essentially is just a cloud upon the debtor's title and right to future enjoyment of the property and the lien impairs the exemption.

■ Requiring an execution sale before a debtor in bankruptcy would be able to

---

**6.** Under the analysis of *Galvan,* 110 B.R. at 450, the available exemption is the lesser of (1) the maximum value of the claimed exemption ($75,000) or (2) the equity of the debtor in the property exclusive of the judicial lien at issue. In this case, the value of the property, as determined by the sale price was approximately $150,000. The security interests, exclusive of the judicial lien at issue totalled approximately $90,000, leaving $60,000 in equity as the "available exemption."

use the applicable homestead exemption to protect his or her property from the claims of creditors is inconsistent with the practical approach of *Galvan.* Virtually all state exemptions protect judgment debtors from execution sales or other attempts to enforce judgments against certain property of the debtor. To require such a sale before a debtor could use state law exemption in bankruptcy would eviscerate the purpose and function of exemptions and would cause absurd results. Moreover, such a result is inconsistent with the principle, discussed above, that the existence of exemptions in bankruptcy presupposes a hypothetical attempt by the trustee to levy upon and sell all of the debtor's property upon the filing of the petition.[7]

In arguing that there can be no impairment of the exemption because California law would not allow him to enforce his liens against the residence until there would be sufficient equity to allow the debtor to enjoy her entire exemption, Harris essentially would seek to preserve his liens as charges against the debtor's interest in the residence. These liens had no present economic value as of the date of the petition because the debtor had no equity above the senior consensual liens and the debtor's homestead exemption. Allowing the liens to remain as a charge against the property until there was sufficient equity buildup or appreciation in value, or until some other event occurred which would allow their enforcement would impair the debtor's ability to use her rights under the homestead exemption to facilitate her fresh start. The judicial liens should therefore be avoided in their entirety.

## CONCLUSION

In this case, the relevant date for determining the nature and extent of the debtor's homestead exemption is the petition date. As of the petition date and absent Harris' liens, the debtor would have been entitled to an automatic homestead exemption of her interest in the residence in the amount of $75,000. The existence of Harris' liens upon the debtor's exempt property impaired the debtor's exemption rights. We therefore AFFIRM the bankruptcy court's order avoiding the Harris judgment liens under section 522(f)(1).

---

7. We note that the Sixth Circuit reached a contrary result applying Ohio law in *In re Dixon,* 885 F.2d 327 (6th Cir.1989). In *Dixon,* the court considered whether a judgment lien impaired the debtor's homestead exemption which exempted certain interests of the debtor in his or her residence from "execution, garnishment, attachment, or sale to satisfy a judgment or order." Ohio Rev.Code § 2329.66(A)(1). The court ruled that since the homestead exemption would be effective only when there is an execution, garnishment, attachment or sale to satisfy a judgment, in the absence of such an involuntary disposition of the debtor's property, the exemption is not impaired. 885 F.2d at 330. The court concluded that by opting out of the homestead exemption, Ohio limited the circumstances in which a homestead exemption is impaired. *Id.* While we are not bound by *Dixon,* we would follow it if we did not find flaws in its reasoning. *See In re Nelson,* 59 B.R. 417, 419 (9th Cir. BAP 1985). We find *Dixon* contrary to the practical approach to impairment applied in *Galvan.* We further note that *Dixon* is contrary to the broad view of impairment applied in other circuits. *See, e.g., In re Snow,* 899 F.2d 337 (4th Cir.1990).