FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: MYRNA JACOBSON,
                          *Debtor,*

JOHN M. WOLFE, Chapter 7
Trustee,
                          *Appellant,*

v.

MYRNA JACOBSON; DONALD
JACOBSON,
                          *Appellees.*

No. 10-60040

BAP No.
10-1036

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Kirscher, Pappas, and Taylor, Bankruptcy Judges, Presiding

Argued and Submitted
February 16, 2012—Pasadena, California

Filed April 23, 2012

Before: Jerome Farris and William A. Fletcher,
Circuit Judges, and Alvin K. Hellerstein,
Senior District Judge.*

Opinion by Judge Farris

---

*The Honorable Alvin K. Hellerstein, Senior United States District
Judge for the Southern District of New York, sitting by designation.

## COUNSEL

Sidney Lanier and Brent Ayscough, Ayscough & Marar, Torrance, California, for the appellant.

Jeffrey T. Vanderveen, Law Offices of Jeffrey T. Vanderveen, Vista, California, for the appellees.

## OPINION

FARRIS, Circuit Judge:

This appeal grows out of an adversary proceeding in Myrna Jacobson's Chapter 7 bankruptcy proceedings. The bankruptcy trustee filed a complaint against Myrna and her husband, Donald Jacobson, claiming that certain money and property belonged to Myrna's bankruptcy estate. The trustee sought turnover to the bankruptcy estate of certain proceeds from the sale of the Jacobsons' homestead, a rental property

held in Donald's name, and income earned from the rental property. The bankruptcy court rejected all of the trustee's claims. The Bankruptcy Appellate Panel affirmed. We have jurisdiction under 28 U.S.C. § 158(d)(1).

We reverse in part and affirm in part. The proceeds from the homestead sale belong to Myrna's bankruptcy estate. The rental property held in Donald's name and the income from it do not.

I.

This case arises from nearly three decades of litigation between the Jacobsons and Myrna's principal creditor, Larry Cunningham. In 1985, Cunningham sued the Jacobsons and their business partners in California state court for torts related to the construction and sale of a beach home in Orange County. The litigation dragged on for 10 years. In 1995, as a re-trial neared, the Jacobsons filed a Chapter 7 bankruptcy petition. The bankruptcy petition automatically stayed the state court litigation under 11 U.S.C. § 362(a)(1).

In 1997, Cunningham filed an adversary complaint in the bankruptcy court objecting to discharge of the Jacobsons' debts, alleging the Jacobsons had fraudulently concealed assets. After a trial, the bankruptcy court concluded that Myrna had fraudulently hidden assets from the bankruptcy court and denied her a discharge under 11 U.S.C. § 727(a). The bankruptcy court concluded, however, that Donald could not have formed the intent to commit fraud due to his mental disabilities and dependence on Myrna to run his affairs. The bankruptcy court thus granted Donald a discharge.

The bankruptcy court's ruling left Cunningham free to pursue his tort claims against Myrna in California state court. In 2000, a jury awarded Cunningham over $800,000.

By early 2006, Cunningham's judgment had increased in value to $1.3 million due to interest. Cunningham applied in

California state court for a judicial sale of the Jacobsons' house on Kensington Road in Los Alamitos, California (the "Kensington property"). In response, Myrna filed the current Chapter 7 bankruptcy petition, which automatically stayed the foreclosure sale under 11 U.S.C. § 362(a)(2). Myrna claimed the Kensington property was her principal residence and therefore qualified for a homestead exemption from creditors' claims under California law. *See* Cal. Civ. Proc. Code § 704.720.

On Cunningham's motion, the bankruptcy court lifted the stay on the sale of the Kensington property. The Orange County Sheriff sold the Kensington property at auction and paid the Jacobsons a portion of the proceeds as required by the California homestead exemption. Cal. Civ. Proc. Code § 704.730(a)(3). The homestead exemption provides that the debtor's portion of the proceeds loses its exempt status if not reinvested in a new homestead within six months. Cal. Civ. Proc. Code § 704.720(b). The Jacobsons did not reinvest their portion of the proceeds within that window.

In 2007, the trustee filed this adversary proceeding against Donald and Myrna. The trustee raised three claims. First, he sought turnover to the bankruptcy estate of the Jacobsons' share of the Kensington property proceeds. Second, he sought turnover of a rental property on Enterprise Drive in Los Alamitos (the "Enterprise property") to which Donald alone held title. Third, the trustee sought turnover of refinancing proceeds and rental income earned from the Enterprise property.

The bankruptcy court denied all of the trustee's claims. The bankruptcy court ruled the Kensington property proceeds were exempt, despite the Jacobsons' failure to reinvest them. The bankruptcy court reasoned that bankruptcy exemptions are fixed at the time of the bankruptcy petition and cannot be changed by post-petition events. The bankruptcy court viewed the homestead exemption as covering the Kensington prop-

erty itself and concluded that post-petition conversion of the Kensington property into sale proceeds could not change its exempt status.

The bankruptcy court further held that Myrna had no interest in the Enterprise property or its income. The bankruptcy court found that documentary evidence established a presumption under California law that Donald was the sole owner. The bankruptcy court also deemed credible the Jacobsons' testimony that Donald had made the down payment on the Enterprise property with an inheritance that was his separate property. The bankruptcy court rejected the trustee's argument that judicial and collateral estoppel precluded the Jacobsons from arguing the Enterprise property was Donald's separate property.

The Bankruptcy Appellate Panel affirmed, and the trustee timely appealed.

## II.

We review decisions of the Bankruptcy Appellate Panel *de novo* and apply the same standard of review that the Bankruptcy Appellate Panel applied to the bankruptcy court's ruling. *In re Penrod*, 611 F.3d 1158, 1160 (9th Cir. 2010). We review conclusions of law *de novo* and findings of fact for clear error. *In re Hoopai*, 581 F.3d 1090, 1095 (9th Cir. 2009). The decision whether to invoke judicial estoppel is reviewed for abuse of discretion. *United States v. Ruiz*, 73 F.3d 949, 953 (9th Cir. 1996). We review the determination whether collateral estoppel is available *de novo*. *Dias v. Elique*, 436 F.3d 1125, 1128 (9th Cir. 2006).

## III.

**[1]** We begin with the Kensington property proceeds. A Chapter 7 bankruptcy petition creates an estate to satisfy creditors' claims. The estate consists of "all legal or equitable

interests of the debtor in property" when the petition is filed. 11 U.S.C. § 541(a)(1). A debtor may, however, exclude property from the estate through various exemptions. Section 522 of the Bankruptcy Code provides a default list of exemptions but allows states to opt out and define their own exemptions. 11 U.S.C. §§ 522(b)(2), 522(b)(3)(A), 522(d). California has opted out of the federal exemption scheme and limited Chapter 7 petitioners to the exemptions debtors may claim in nonbankruptcy cases. Cal. Civ. Proc. Code §§ 703.010(a), 703.130.

**[2]** When Myrna filed the current bankruptcy petition, she claimed a homestead exemption for the Kensington property. California, like many states, gives debtors an exemption for their "principal dwelling" or "homestead." Cal. Civ. Proc. Code §§ 704.710(c), 704.720(a). The California homestead exemption does not, however, prevent a judgment creditor from forcing a judicial sale of the homestead. *See* Cal. Civ. Proc. Code § 704.740. Such a sale will go forward so long as there are enough proceeds to satisfy all liens and encumbrances on the property and provide the debtor with a statutorily prescribed exemption amount. Cal. Civ. Proc. Code §§ 704.730, 704.800(a). When the Kensington property was sold, the California homestead exemption entitled the Jacobsons to $150,000 of the proceeds. Cal. Civ. Proc. Code § 704.730(a)(3) (2007).

**[3]** The debtor's share of the proceeds are not fully exempt either. If the debtor does not reinvest his proceeds in a new homestead within six months of receipt, they lose their exempt status. Cal. Civ. Proc. Code § 704.720(b). The Jacobsons did not reinvest the $150,000 they received. The trustee argues—and we agree—that these proceeds lost their exempt status as a result.

**[4]** Under the so-called "snapshot" rule, bankruptcy exemptions are fixed at the time of the bankruptcy petition. *See White v. Stump*, 266 U.S. 310, 313 (1924). Those exemp-

tions must be determined in accordance with the state law "applicable on the date of filing." 11 U.S.C. § 522(b)(3)(A). And "it is the *entire* state law applicable on the filing date that is determinative" of whether an exemption applies. *In re Zibman*, 268 F.3d 298, 304 (5th Cir. 2001) (emphasis in original). In this case, the entire state law includes a reinvestment requirement for the debtor's share of the homestead sale proceeds. Cal. Civ. Proc. Code § 704.720(b).

*Myers v. Matley*, 318 U.S. 622 (1943), illustrates the proper approach. *Myers* centered on a Nevada law that allowed a debtor to claim a homestead exemption by filing a homestead declaration with a county recorder. The debtor's wife filed the declaration after bankruptcy proceedings began. *Id.* at 623. Nonetheless, the Supreme Court held the homestead was exempt from the bankruptcy estate. The Supreme Court looked at the whole Nevada homestead exemption, which provided that a debtor could file a homestead declaration at any time before a judicial sale. *Id.* at 626-28. Thus, it did not matter that the homestead was not exempt when the bankruptcy petition was filed. "[T]he right to make and record the necessary declaration of homestead existed in the bankrupt at the date of filing the petition[,] . . . [and] [t]he assertion of that right before actual sale in accordance with State law did not change the relative status of the claimant and the trustee subsequent to the filing of the petition." *Id.* at 628.

Similarly, we analyze the California homestead exemption in terms of the exact scope of the rights it confers at the time of the bankruptcy petition. In *In re Golden*, 789 F.2d 698 (9th Cir. 1986), the debtor had filed for bankruptcy after selling his California homestead and had then let the reinvestment period lapse without investing his exempt share of the proceeds. *Id.* at 699. The debtor argued the proceeds were nonetheless exempt because they had been exempt when he filed for bankruptcy. *Id.* at 700. We rejected that argument and held the debtor had received the proceeds subject to the reinvestment

condition. *Id.* Those proceeds could thus lose their exempt status once the reinvestment period lapsed. *Id.*

**[5]** There is no material difference between *Golden* and this case. The homestead exemption gave the Jacobsons clearly defined rights with respect to the Kensington property. The Jacobsons had a right to $150,000 in proceeds. Cal. Civ. Proc. Code § 704.730(a)(3) (2007). That right was contingent on their reinvesting the proceeds in a new homestead within six months of receipt. Cal. Civ. Proc. Code § 704.720(b). The Jacobsons did not abide by that condition and thus forfeited the exemption.

The Jacobsons argue *Golden* is inapposite because Myrna filed for bankruptcy before the homestead was sold and thus claimed an exemption in the Kensington property, not the proceeds. We reject the argument. The homestead exemption merely gave the Jacobsons a conditional right to a portion of the proceeds from the sale of the Kensington property. There was no exemption in the Kensington property itself. To the contrary, the exemption explicitly allowed Cunningham to force a judicial sale of the Kensington property. Cal. Civ. Proc. Code § 704.740. The Jacobsons could thus expect no more than $150,000 in proceeds that were subject to a reinvestment requirement.

In trying to distinguish *Golden*, the Jacobsons essentially ask us to read out the reinvestment requirement from the homestead exemption. However, "[n]othing in [11 U.S.C. § 522(b)] limits [California's] power to restrict the scope of its exemptions; indeed, it could theoretically accord no exemptions at all." *Owen v. Owen*, 500 U.S. 305, 308 (1991). The Bankruptcy Code does not allow the Jacobsons to invoke one part of the homestead exemption and ignore another part.

We note that at least two courts have determined that the debtor's share of the proceeds from the post-petition sale of his homestead should be permanently exempt. *See In re Her-*

*man*, 120 B.R. 127, 130 (B.A.P. 9th Cir. 1990) (analyzing California homestead exemption); *In re Lane*, 364 B.R. 760, 762-64 (Bankr. D. Or. 2007) (analyzing Oregon homestead exemption). To the extent these cases add anything to the Jacobsons' argument, they rely on policy arguments we find unpersuasive.

*Herman* found that permanently exempting proceeds from post-petition homestead sales served the Bankruptcy Code's goal of giving debtors a "fresh start." 120 B.R. at 130. This focus on a "fresh start" tells only half the story. By giving states the opportunity to define exemptions for the purposes of federal bankruptcy law, the Bankruptcy Code demands respect for the ways in which states balance the rights of debtors and creditors. See *Owen*, 500 U.S. at 308. California enacted the homestead exemption to ensure that debtors and their families do not become homeless. *Webb v. Trippet*, 235 Cal. App. 3d 647, 650 (Cal. Ct. App. 1991). To that end, it "requires reinvestment in order to prevent the debtor from squandering the proceeds for nonexempt purposes." *Golden*, 789 F.2d at 700. California has thus determined that if a debtor does not put his proceeds to proper use, they ought to be used to satisfy creditors' claims. Ignoring the reinvestment requirement "would frustrate the objective of the California homestead exemption and the bankruptcy act itself, which limits exemptions to [those] provided by state or federal law." *Id.* at 700.

**[6]** *Lane* expressed concern that allowing the proceeds from post-petition homestead sales to lose their exempt status would "undermine[ ] finality and foster[ ] inefficiency" as well as "place[ ] a debtor's rights in limbo." 364 B.R. at 764. The trustee's rule, however, does not strike us as any less fair or efficient than what *Golden* already allows. The reinvestment period under the California homestead exemption lasts six months regardless of when a debtor sells his homestead. *Lane* theorized that if the proceeds from post-petition homestead sales could lose their exempt status, trustees might

"claim an interest in the homestead and postpone closing a case so long as there is any possibility the debtor's circumstances might change." *Id.* at 765. We find this concern too speculative. We doubt a trustee would delay liquidating an estate because (1) the debtor's homestead might be sold at some point in the future and (2) the debtor might fail to reinvest his share of the proceeds six months after the sale.

## IV.

**[7]** We turn to the trustee's claims for turnover of the Enterprise property and its income to Myrna's bankruptcy estate. Because these claims turn on questions of fact, we must consider the appropriate burden and standard of proof. The trustee has the burden of proving the estate is entitled to a turnover. 5 Collier on Bankruptcy ¶ 542.02 (16th ed. 2011). The bankruptcy court assumed—although the Supreme Court has not conclusively held—that the standard of proof is a preponderance of the evidence. *See id.* at n.15. Because we agree with the bankruptcy court that the trustee has not proven his claim under this relatively forgiving standard, we need not decide whether the Bankruptcy Code requires a higher one.

**[8]** First, title documents show Donald is the sole owner of the Enterprise property. In California, record title is presumptively correct. Cal. Evid. Code § 662. Second, the presumption under California law that property acquired during marriage is community property does not apply here. *See* Cal. Fam. Code § 760. There is no community property presumption where a spouse acquires property in his name alone with the other spouse's consent. *In re Marriage of Brooks*, 169 Cal. App. 4th 176, 186-87 (Cal. Ct. App. 2008). The Enterprise property sale documents list Donald as the sole buyer, and before the closing Myrna executed an interspousal transfer deed confirming the Enterprise property was Donald's separate property. The community property presumption also does not apply to property traceable to one spouse's separate property. *See In re Marriage of Haines*, 33 Cal. App. 4th 277,

289-90 (Cal. Ct. App. 1995). The Jacobsons testified that Donald used part of a 1996 inheritance to make the down payment on the Enterprise property.

The trustee points to the absence of documentary proof that Donald's inheritance was kept separate from the Jacobsons' community property. But the bankruptcy court determined that the inheritance remained separate property after hearing testimony from the Jacobsons. "When factual findings are based on determinations regarding the credibility of witnesses, we give great deference to [those] findings." *In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010).

Next, the trustee argues that Donald's inheritance belonged to the bankruptcy estate from the 1990s bankruptcy proceedings rather than Donald. The trustee lacks standing to raise this claim. Article III standing requires, among other things, a "concrete and particularized injury." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). The alleged injury affected the earlier bankruptcy estate, not the current one.

Last, the trustee argues that judicial and collateral estoppel require turnover of the Enterprise property. The trustee contends the Jacobsons cannot claim Donald depends on Myrna to run his affairs and then claim she has no interest in the Enterprise property. This argument fails. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an advantage by asserting one position, and then later seeking an advantage by taking a clearly inconsistent position." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 782 (9th Cir. 2001). It is not inconsistent for Donald to own separate property and let Myrna run his affairs. Collateral estoppel "forecloses relitigation of those issues of fact or law that were actually litigated and necessarily decided by a valid and final judgment in a prior action between the parties." *In re Duncan*, 713 F.2d 538, 541 (9th Cir. 1983). The finding from the 1990s bankruptcy proceedings that Myrna ran Donald's

affairs did not decide whether Myrna has an interest in Donald's property.

REVERSED in part, AFFIRMED in part, and REMANDED.

Each party shall bear its own costs on appeal.