**NOT FOR PUBLICATION**



# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP Nos.   CC-17-1092-FSKu |
| | CC-17-1303-FSKu |
| KATHLEEN KELLOGG-TAXE, | (Consolidated) |
| Debtor. | Bk. No. 2:12-bk-51208-RK |
| RICHARD TAXE, | Adv. Pro. 2:13-ap-02019-RK |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| CAROLYN A. DYE, Chapter 7 Trustee, | |
| Appellee. | |

Argued and Submitted on July 27, 2018
at Pasadena, California

Filed – August 6, 2018

Appeal from the United States Bankruptcy Court
for the Central District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

---

Appearances:      Appellant Richard Taxe argued pro se; Christian T. Kim of Dumas & Kim, APC argued on behalf of appellee Carolyn A. Dye, Chapter 7 Trustee.

---

Before: FARIS, SPRAKER, and KURTZ, Bankruptcy Judges.

## INTRODUCTION

Richard Taxe, husband of chapter 7[1] debtor Kathleen Kellogg-Taxe, appeals the bankruptcy court's judgment (1) determining that the shares of Dwarfco Productions, Inc. ("Dwarfco") and its assets, including a promissory note and deed of trust owned by Dwarfco, were property of the bankruptcy estate, (2) ordering Richard,[2] his brother Ronald Taxe, and Dwarfco to turn over those shares and assets to the bankruptcy trustee, and (3) holding Richard liable to the chapter 7 trustee for $2,509, which the court found was the value of gemstones that he failed to turn over to the trustee pursuant to a prior order. Richard argues on appeal that the court committed numerous errors of fact and law. Among other things, he

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] We refer to Richard, Kathleen, and Ronald by their first names for the sake of clarity and convenience. We intend no disrespect.

maintains that Dwarfco is owned by Ronald, and therefore its shares and assets cannot be community property of Kathleen and Richard subject to turnover. He also contends that the chapter 7 trustee's complaint was untimely and that the bankruptcy court and the trustee cannot reach property located outside of California, where Kathleen filed her petition.

Richard's contentions are meritless. We AFFIRM.

## FACTUAL BACKGROUND

### A.    The Taxe parties

Richard has been married to Kathleen since 1984. They do not have any written agreement regarding their interests in each other's property.

Dwarfco was incorporated in the state of Nevada in 1990. Richard claims that Ronald's family trust is the actual owner of Dwarfco. Richard maintains that he is an officer of Dwarfco but does not have an ownership interest in Dwarfco.

Dwarfco's sole asset is a $1.1 million promissory note made in 2007 by Carlton Global Resources, LLC,[3] which is secured by a deed of trust ("Deed of Trust") encumbering real property located in Boron, California. Ronald testified that all income from the Deed of Trust is paid to Richard, not Dwarfco, and Richard testified that Kathleen also receives some of the

---

[3] Carlton Global Resources was going through its own chapter 7 bankruptcy case. Richard repeatedly refers to the alleged fraud committed by the trustee in that case, but those arguments have no bearing on this appeal, and we will not address them.

proceeds.

Before she filed the present case, Kathleen filed for bankruptcy once in 2009 and three times in 2012. All four cases were dismissed shortly after their inception. In those cases, she stated in her schedules (under penalty of perjury) that she had a one-half interest in Dwarfco and a one-half interest in Massrock, Inc.[4] In 2009, she stated that the combined value of those interests was $4 million, and in 2012, she valued her interests at $2.5 million. She also represented that her shares in Dwarfco and the income generated from the Deed of Trust were property of her chapter 13 bankruptcy estate. She further testified that her estate included original paintings worth $50,000 and furs, jewelry, and gems valued at $40,000.

## B.    Kathleen's present bankruptcy case

On December 18, 2012, Kathleen filed a chapter 11 bankruptcy petition. She did not respond to a creditor's motion to convert her case to a chapter 7 case, and the court granted the motion. Appellee Carolyn A. Dye was appointed chapter 7 trustee ("Trustee").

Kathleen failed to file the required schedules of assets and liabilities. The Trustee requested that the court not dismiss the case on that basis and instead permit the Trustee to file schedules based mostly on information taken from the filings in Kathleen's prior bankruptcy cases. The court

---

[4] Massrock, Inc. was formed in 1996 and is at least partially owned and operated by Richard.

4

granted the Trustee's request, and the Trustee filed schedules listing as an asset shares of Dwarfco and Massrock valued at $2.5 million. The Trustee also scheduled income from real property in the amount of $3,050 and a monthly "Contribution from Ronald Taxe" of $1,050.

In May 2013, Kathleen filed amended schedules. Even though she had claimed a substantial interest in Dwarfco in her prior four bankruptcy proceedings, she omitted any mention of Dwarfco shares and checked the box indicating that her interest in stocks was "None." She also omitted any income related to real property or Ronald.

In July 2013, the Trustee examined Richard under Rule 2004. Richard testified that he was the owner of and in possession of a painting by Wassily Kandinsky ("Kandinsky Painting"). He testified that he acquired the painting in 2009 and that it was "worth a lot of money." He also testified that he owned valuable gemstones and diamonds. Kathleen had not disclosed the existence of either the Kandinsky Painting or the gemstones in her schedules.

The Trustee initiated an adversary proceeding against Richard, Ronald, and Dwarfco ("Defendants"),[5] seeking turnover of the Deed of Trust, the Kandinsky Painting, and the gemstones under § 542(a). She

_____

[5] The Trustee also sued Massrock, alleging that it is a sham corporation whose bank account Richard and Kathleen used to pay their living expenses. Massrock filed its own bankruptcy petition in November 2013 and did not participate in the adversary proceeding or this appeal.

alleged that Dwarfco is a sham corporation and that Richard formed Dwarfco for the purpose of evading his creditors. Because the state of Nevada revoked Dwarfco's charter in 2007, it no longer existed as a legal entity. Therefore, according to the Trustee, Richard and Ronald were successors in interest to any claim that Dwarfco may have under the Deed of Trust, and Richard's interest was shared with Kathleen as community property. She therefore asserted that any assets of Dwarfco were property of the estate in Kathleen's case.

The Trustee filed a motion for a preliminary injunction, requesting that the bankruptcy court: (1) enjoin Kathleen and the Defendants from transferring any shares of Dwarfco or any interest in the Dwarfco Deed of Trust and promissory note; (2) appoint a receiver to liquidate Dwarfco's assets; (3) require the parties to turn over the Kandinsky Painting; and (4) require the parties to turn over the gemstones in Richard's possession.

The court entered an interim order on December 6, 2013, prohibiting Kathleen and the Defendants from transferring or disposing of any assets that were the subject of the Trustee's motion.

On April 21, 2014, the bankruptcy court issued a Memorandum of Decision and an Order Granting, in Part, Denying, in Part, Trustee's Motion for Preliminary Injunction and Appointment of Receiver ("Preliminary Injunction"). The court stated that the Trustee "has pled sufficient evidence to prove that the Kandinsky Painting (acquired in or

6

about 2009) and Gemstones (acquired in or about 1993) are community property and thus property of the Debtor's estate. . . . Defendants do not appear to contest this conclusion." As for Dwarfco, the court stated that the Trustee "proffered sufficient evidence that Debtor has an interest in Dwarfco (formed in 1990), including any income received from the Dwarfco Note and DOT. Debtor claimed a 50% interest in Dwarfco in her prior bankruptcy schedules under penalty of perjury, and also claimed an interest in the Dwarfco Note and DOT."

The court enjoined the Defendants from transferring, disposing of, or hypothecating Dwarfco's shares, assets, inventory, and Deed of Trust, the Kandinsky Painting, and the gemstones. The Preliminary Injunction also instructed that "the Kandinsky painting and the gemstones shall be turned over to the Trustee, forthwith, to be held in trust pending the resolution of this adversary proceeding or further order of the court."[6]

Over a year later, on or around June 3, 2015, Richard delivered a collection of gemstones to the Trustee. However, it was substantially less than what the Trustee expected: according to the Trustee, the surrendered gemstones had an appraised value of only $2,491.25.

Richard did not surrender the Kandinsky Painting.

---

[6] It also authorized the appointment of a receiver to take possession of and preserve Dwarfco's assets and inventory, "pending the resolution of this adversary proceeding and further order of this Court." So far as the record reveals, the court never appointed a receiver.

## C.  Trial

The bankruptcy court held a one-day trial on the Trustee's complaint on July 28, 2016.[7] Richard appeared pro se; Ronald and Dwarfco did not attend.

Richard's testimony was confusing and scattershot, but he made a number of important admissions. He testified that he ran his money through Dwarfco's bank accounts:

> My brother told me if I wanted to run some checks through there or some business through there I can as long as I don't make the company, you know, vulnerable to any debtor [sic] I think. All that money in the – all those deposits were my money. The checks were made out to me. I deposited them in there and I paid bills with them. And it didn't hurt my brother, didn't hurt Dwarfco, didn't hurt anybody. I did it because . . . there were people before [Trustee's counsel] trying to cause me trouble all the time . . . .

He also testified that he rarely received money from the interest on the Deed of Trust, and that sometimes that money would go to Kathleen.[8]

---

[7] Prior to trial, the parties submitted a joint pretrial order in which Richard agreed that many facts were undisputed. Despite his pretrial stipulation, Richard disputes many of those facts on appeal.

[8] Richard testified:

THE COURT: [So] the money on the note went to you[r] wife?

THE WITNESS: No, no, no. I think that my brother said, "Give her

(continued...)

The Trustee asked Richard about Kathleen's prior statements that she owned shares of Dwarfco. Richard brushed off those filings because the cases were quickly terminated and did not result in any relief: "Let's not talk about all of those bankruptcies. Those were bankruptcies she never did anything. . . . The whole thing - she bought herself about a month and a half or two months' time. That's all." He also asserted that Kathleen did not "testify" to any facts in her schedules because the representations were not made verbally or in a deposition.

He stated that the Kandinsky Painting was worthless because it was a forgery. Because it was worthless, he had given it to a woman to sell for her charity. The court inquired why he gave away the Kandinsky Painting despite the bankruptcy court's injunction against transferring the painting; he responded, "Well, apparently . . . [I] didn't read it right or something." When asked why he did not turn over the Kandinsky Painting pursuant to the Preliminary Injunction, he said that "I'd already given it to that woman

[8](...continued)
the money." It wasn't – it was like $5,000 or $6,000.

> THE COURT: Oh, okay. So the money went to you and then you gave it to your wife?

> THE WITNESS: If it came to me, I would have given it to my wife immediately, but I thought it went to her. . . . But it's not community property.

9

back there. That's what – it's not worth anything. I don't care."

Regarding the gemstones, Richard testified that he had not sold or acquired gemstones for at least fifteen years. He said that, at some point after the court issued the Preliminary Injunction, they searched the house and found some gems that had "fallen under the tables."

## D. The findings of fact and conclusions of law

The bankruptcy court issued findings of fact and conclusions of law on March 10, 2017. It stated that community property of a married debtor and her spouse is property of the bankruptcy estate under California law. It noted that property acquired during marriage is presumptively community property, but that presumption can be rebutted.

Regarding Dwarfco, the bankruptcy court held that Richard owned Dwarfco by virtue of his control over it and that any asset Dwarfco owned that is controlled and enjoyed by Richard is his property. Accordingly, the court found that the shares of Dwarfco and the Deed of Trust are assets owned by Kathleen and Richard as community property. It held that, under Nevada law, Dwarfco was Richard's alter ego because: (1) Richard influenced and governed Dwarfco; (2) there was a unity of interest between Dwarfco and Richard because Richard had control and enjoyment of Dwarfco and used Dwarfco's bank accounts to pay family expenses; (3) Richard commingled his funds with those of Dwarfco and treated Dwarfco's bank account as his own; (4) Richard testified at trial that income

10

from the Dwarfco Deed of Trust went to Kathleen, rather than Ronald, the purported owner of the Dwarfco shares; and (5) it would be unjust to treat Dwarfco as a separate entity where Richard avoids claiming an interest in businesses he controls "because of judgments," yet uses those businesses to pay personal and family expenses and to avoid exposure to creditors. The court also relied on Kathleen's bankruptcy schedules in her previous cases, wherein she scheduled a fifty percent interest in Dwarfco and identified the Deed of Trust as a source of her income.

As for the gemstones, the bankruptcy court found that they were property of the estate and that Richard's failure to turn over the gemstones prevented the Trustee from ascertaining their value as of the petition date and realizing their value for the benefit of the bankruptcy estate. The court stated that, based on Richard's delay in turning over the gemstones until fourteen months after the Preliminary Injunction and over two and a half years after the petition date, "the court draws a reasonable inference that the gemstones he turned over in June 2015 were not all of the gemstones that he had when the Debtor's bankruptcy case was filed." It accepted the Trustee's total valuation of the gemstones at $5,000.

Regarding the Kandinsky Painting, the court held that it was part of the bankruptcy estate and that Richard wrongfully failed to turn over the painting. It found his testimony "not credible" as to the painting's value. Nevertheless, it did not believe that Richard would now turn over the

11

painting and it held that the "Trustee has not produced sufficient evidence to establish the value of the Kandinsky painting for the court to award its value to the bankruptcy estate."

The bankruptcy court issued its judgment ("Judgment") holding that the shares of Dwarfco and its assets, including the Deed of Trust, were property of the bankruptcy estate and ordered the Defendants to turn over the Dwarfco shares and the Deed of Trust. The court also ordered Richard to pay $2,509 to the Trustee, representing the gemstones' value. But it entered judgment in favor of Richard as to the Kandinsky Painting.

## E.    The BAP appeals

Richard filed a timely notice of appeal from the Judgment. The BAP consolidated that appeal with an untimely second appeal concerning identical issues.

Ronald and Dwarfco also appealed the Judgment to the BAP. According to Richard, Ronald and Dwarfco decided not to pursue their appeal "to save thousands of dollars." They failed to file an opening brief, and the BAP motions panel dismissed their appeal for lack of prosecution.[9]

---

[9] Subsequently, the Trustee requested court approval to sell the Deed of Trust. At oral argument, the parties represented to the Panel that the court granted the Trustee's motion. The bankruptcy court entered an order approving the sale on August 3, 2018, but the sale has not closed, as far as we can tell. The completion of the sale might render this appeal partly moot, but that has not yet happened.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(E).

The Trustee argues that we do not have jurisdiction over this appeal, because Richard is asserting rights and arguments on behalf of Ronald and Dwarfco, who chose not appeal. We agree that Richard is not entitled to present arguments on behalf of Ronald or Dwarfco, so we will consider only Richard's arguments that concern his own rights. Accordingly, we have jurisdiction over Richard's appeal under 28 U.S.C. § 158.

## ISSUES

(1) Whether the bankruptcy court clearly erred in its factual findings.

(2) Whether the bankruptcy court erred as a matter of law in determining that the court could exercise jurisdiction over Dwarfco and its assets, that the Dwarfco shares and Deed of Trust were community property, and that the Trustee timely sought turnover.

## STANDARDS OF REVIEW

We review the bankruptcy court's legal conclusions de novo. *Banks v. Gill Distrib. Centers, Inc. (In re Banks)*, 263 F.3d 862, 867 (9th Cir. 2001). Whether an asset is estate property is a conclusion of law reviewed de novo. *Groshong v. Sapp (In re MILA, Inc.)*, 423 B.R. 537, 542 (9th Cir. BAP 2010). De novo review is independent and gives no deference to the trial court's conclusions. *Roth v. Educ. Credit Mgmt. Corp. (In re Roth)*, 490 B.R.

13

908, 915 (9th Cir. BAP 2013).

We review the bankruptcy court's factual findings underlying its legal conclusions for clear error. *Bronitsky v. Bea (In re Bea)*, 533 B.R. 283, 285 (9th Cir. BAP 2015). A finding of fact is clearly erroneous if it is illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010). The bankruptcy court's choice among multiple plausible views of the evidence cannot be clear error. *United States v. Elliott*, 322 F.3d 710, 715 (9th Cir. 2003).

## DISCUSSION

Richard's briefs are rambling and his arguments are hard to parse. For example, he objects to some of the court's findings on the ground that he does not remember giving the testimony on which the findings were based, even though the trial transcript shows that he gave that testimony. He makes legal arguments based solely on his "understanding" of or "belief" regarding the law, without providing any supporting authority. (As we will see, his legal understanding and beliefs are deficient.) He does not understand the function of an appellate court: he offers to "prove beyond a shadow of a doubt" his factual assertions, but the time for factual development is long past. Even construing Richard's arguments liberally, *see Ozenne v. Bendon (In re Ozenne)*, 337 B.R. 214, 218 (9th Cir. BAP 2006), we

14

AFFIRM.[10]

## A.  A trustee may seek turnover of property belonging to the bankruptcy estate.

"A turnover action 'invokes the court's most basic equitable powers to gather and manage property of the estate.'" *Bencomo v. Avery (In re Bencomo)*, BAP No. CC-15-1442-DKuF, 2016 WL 4203918, at *5 (9th Cir. BAP Aug. 8, 2016) (quoting *Braunstein v. McCabe*, 571 F.3d 108, 122 (1st Cir. 2009)). Section 542 of the Bankruptcy Code provides:

> [A]n entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

§ 542(a). The term "entity" includes individuals and corporations. §§ 101(15), (41).

The property to be turned over must be property of the bankruptcy estate. §§ 363, 542(a); *see White v. Brown (In re White)*, 389 B.R. 693, 699 (9th Cir. 2008). The property of the estate includes:

---

[10] Richard makes much of the court's chastisement of the Trustee's counsel for his trial filings and argues that the court bent over backwards to make the Trustee's arguments. We reject this view. The court thought that the Trustee's counsel could have made its job easier, but the court never assumed the role of an advocate or exceeded its proper bounds.

> All interests of the debtor and the debtor's spouse in community property as of the commencement of the case that is –
>
>> (A) under the sole, equal, or joint management and control of the debtor; or
>>
>> (B) liable for an allowable claim against the debtor, or for both an allowable claim against the debtor and an allowable claim against the debtor's spouse, to the extent that such interest is so liable.

§ 541(a)(2). The trustee has the burden of proving that the bankruptcy estate is entitled to turnover. *Wolfe v. Jacobson (In re Jacobson)*, 676 F.3d 1193, 1200-01 (9th Cir. 2012).

## B. The bankruptcy court's factual findings are not clearly erroneous.

Richard mostly argues that the bankruptcy court committed factual errors.[11] His arguments are of the "kitchen sink" variety. We divide them into six categories. None has any merit.

### 1. The bankruptcy court ordered turnover.

Richard argues that the bankruptcy court did not order him to turn over the gemstones. First, he argues that "during my research for this case I learned that there was **No Order for Turnover** of anything to the Trustee only an Injunction . . . ." Second, he contends that the injunction was

---

[11] His brief also asserts that the Trustee's complaint contained false allegations. We review only court decisions, and therefore we disregard his objections to the complaint (except those that duplicate his objections to the court's findings of fact).

defective because it "was signed on the first page by Judge Neiter. There was no signature on the second page." Third, he argues that the Preliminary Injunction did not require him to turn over any assets. He says that "Judge Kwan is mistaken in thinking that Judge Neiter's Preliminary Injunction . . . called for the turnover of any Dwarfco asset. Injunctions don't require turnover of assets to Trustees." Fourth, he contends that he complied with the Preliminary Injunction because he did not sell or transfer any of Dwarfco's assets.

In other words, he claims that: there was no order; the order was defective; the order did not say what the court thought it said; and he complied with (a portion of) the order. Logically, not all of these arguments can be correct. In this case, none of them is correct.

The facts are straightforward, and the bankruptcy court correctly recounted them. On December 6, 2013, the bankruptcy court issued an interim order that prevented Richard from selling, transferring, disposing of, or hypothecating Dwarfco's shares and assets, gemstones, and any antiques or artwork within his possession. Despite this order, Richard transferred the Kandinsky Painting and possibly disposed of some of the gemstones.

On April 21, 2014, the bankruptcy court's Preliminary Injunction unequivocally ordered Richard to turn over the Kandinsky Painting and gemstones: "The Kandinsky Painting and the Gemstones shall be turned

17

over to the Trustee, forthwith, to be held in trust pending the resolution of this adversary proceeding or further order of the Court."

These orders existed. They appear on the bankruptcy court's docket and in the excerpts of record.

These orders were effective. It is true that Judge Neiter's electronic signature appears on the second page of the three-page Preliminary Injunction. But this clerical mistake does not invalidate the order.

The fact that the orders were styled as injunctions is of no moment. The body of the Preliminary Injunction unambiguously required turnover of the assets. The title did not negate the body of the order.

There is no serious ground for dispute that the Defendants violated the interim order and the Preliminary Injunction. Richard admitted at trial that, after the court entered the interim order, he gave away the Kandinsky Painting.

The bankruptcy court therefore did not clearly err in finding that the interim order and Preliminary Injunction barred Richard from transferring the gemstones, the Kandinsky Painting, and the Dwarfco shares and assets, that the Preliminary Injunction required Richard to turn over those assets to the Trustee, and that Richard defied both orders.

## 2. Dwarfco was inactive on the petition date.

The bankruptcy court pierced the corporate veil between Richard and

18

Dwarfco,[12] held that the shares and assets of Dwarfco are community property of Richard and Kathleen, and therefore held that those assets are property of Kathleen's bankruptcy estate. The bankruptcy court based these determinations partly on its finding that Dwarfco was an inactive corporation.

Richard argues that Dwarfco is not inactive. He states repeatedly that Dwarfco regained active status and points to documents purportedly evidencing Dwarfco's reinstatement in January 2014; he also maintains that the bankruptcy court should have done its own investigation and searched Nevada business registration websites. We reject this argument for multiple reasons.

First, Dwarfco's inactive status was only one reason why the bankruptcy court found that Richard personally owned the corporate assets. The court also relied on Richard's complete control over and dominance of Dwarfco. Richard does not challenge any of those other bases

---

[12] The bankruptcy court said that Dwarfco was Richard's alter ego. This may have been the wrong label. The Ninth Circuit has held that alter ego is a procedural mechanism to transfer liability: "In fact, there is no such thing as a substantive alter ego claim at all: 'A claim against a defendant, based on the alter ego theory, is not itself a claim for substantive relief, e.g., breach of contract or to set aside a fraudulent conveyance, but rather, procedural . . . .'" *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1251 (9th Cir. 2010) (quoting *Hennessey's Tavern, Inc. v. Am. Air Filter Co.*, 204 Cal. App. 3d 1351, 1359 (1988)). But the use of the wrong label is not reversible error: the bankruptcy court properly found that Richard's control and use of Dwarfco evidenced his ownership interest.

(other than to repeat ad nauseam that Dwarfco was owned by Ronald's family trust). Therefore, even if the finding about Dwarfco's status was wrong (and it wasn't), the court's result would stand.

Second, Richard offered no admissible evidence of Dwarfco's status. Richard's Exhibit 9 is a document purportedly from the Nevada Secretary of State website. This document is not authenticated or even dated, and we cannot tell whether it was presented at trial or at any other time to the bankruptcy court.

Third, the bankruptcy court had no obligation to conduct its own independent investigation into Dwarfco's status. *See* ABA Model Code of Judicial Conduct R. 2.9(C) ("A judge shall not investigate facts in a matter independently, and shall consider only the evidence presented and any facts that may properly be judicially noticed.").

Fourth, even by Richard's and Ronald's own account, Dwarfco was only reactivated as of January 2014, over a year after Kathleen filed her bankruptcy petition. The Trustee provided proof that Dwarfco was inactive in the state of Nevada on the petition date. The contents of the estate are ascertained as of the petition date. § 541. Richard and Ronald lacked power to remove assets from the estate by reactivating Dwarfco.

Therefore, the bankruptcy court did not clearly err in finding that Dwarfco was an inactive corporation and, more importantly, did not err in deciding that Dwarfco's assets were property of Kathleen's bankruptcy

20

estate.

**3.    Kathleen's prior statements under oath were "testimony."**

Richard repeatedly insisted at trial and in this appeal that Kathleen's statements in her earlier bankruptcy cases cannot be used against her because she did not "testify" to any facts. He states that "[t]estified means questioned under oath etc.[,]" and "she never 'testified' in the prior Chapter 13 bankruptcies." He is wrong.

A party's statements in her bankruptcy schedules are made under oath. *See Khalil v. Developers Sur. & Indem. Co. (In re Khalil)*, 379 B.R. 163, 172 (9th BAP Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009) ("A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath."); *Olympic Coast Inv., Inc. v. Wright (In re Wright)*, 364 B.R. 51, 71-72 (Bankr. D. Mont. 2007), *aff'd*, 2008 WL 160828 (D. Mont. Jan. 16, 2008), *aff'd*, 340 F. App'x 422 (9th Cir. 2009) ("A false oath or statement is made when it occurs (1) in the debtor's schedules or (2) at an examination during the course of the proceedings."). When Kathleen signed her schedules, she declared under penalty of perjury that the information she provided was true and correct. Such statements are "testimony."

Moreover, in the joint pretrial order, Richard agreed that Kathleen had previously testified to those facts in her prior bankruptcy cases:

2. . . . In the schedules submitted in each of the subject prior

21

bankruptcies, the Debtor **testified** that she had a one-half interest in Massrock, Inc. and Dwarfco. . . .

3. In the subject prior bankruptcies, the Debtor **testified** that the income from the Dwarfco Deed of Trust was property of her Chapter 13 bankruptcy estate.

4. The Debtor **testified** in a prior bankruptcy that her estate included original paintings having a value of $50,000 and "furs and jewelry," including "gems" having a value of $40,000.

(Emphases added.)

Therefore, the bankruptcy court did not clearly err in relying on Kathleen's prior statements.

### 4.     Richard and Kathleen received money from the Dwarfco Deed of Trust.

Richard contends that he did not have any shares in Dwarfco and did not receive any income from Dwarfco.

As for the shares, Richard misapprehends the bankruptcy court's findings. The court largely repeated Richard's contentions that he did not own Dwarfco shares. But it found that he nevertheless had an ownership interest in Dwarfco by virtue of his control of the company and his use of the company's accounts as his personal piggy bank.

The bankruptcy court also found that Richard received income from Dwarfco's Deed of Trust. Both Ronald and Richard stated in their declarations that Richard was entitled to receive any proceeds from the

22

Deed of Trust. Moreover, Richard testified at trial that both he and Kathleen occasionally received income from the Deed of Trust.

The bankruptcy court did not clearly err in determining that Richard had an ownership interest in Dwarfco and received income from the Deed of Trust.

**5. The trial transcript confirms Richard's testimony under oath.**

Richard disputes certain findings because he says that he does not remember making such statements at trial. Fortunately, we need not rely on Richard's memory, because we have a verbatim transcript.

He states that he does not remember testifying that he took $98,000 from Massrock's bank account, but "I had every right to spend it." The transcript shows that, at trial, the Trustee represented that there was $98,623 in Massrock's bank account on the petition date; Richard stated that "I remember there was a lot of money but we were spending it[,]" and that "if it was in there, I'm sure we spent it."

Richard further professes "surprise" to learn that he testified at trial that Ronald told him that he could run checks and business through Dwarfco. He tries to explain how that could not be the case, since Dwarfco has not had a bank account since 2008. Regardless, he concedes that he made the statement at trial under oath, as the transcript shows.

Richard also states that he does not "remember receiving any income from Dwarfco unless Ronald Taxe gave it to me but that had to be more

23

than 8 years ago." But, as the bankruptcy court accurately pointed out, Ronald and Richard stated in declarations that Richard is entitled to receive interest payments on the Dwarfco Deed of Trust. Additionally, Richard testified at trial that income from the Deed of Trust went to him or Kathleen on a few occasions.

The bankruptcy court did not clearly err in recounting and relying on Richard's testimony.

### 6. The findings regarding joint bank accounts and assets are not clearly erroneous.

Richard also takes issue with the court's findings regarding his property. He appears to agree with the court's finding that he has no marital agreement with Kathleen with respect to their property interests, but nevertheless argues that they did not have any joint bank accounts. He does not appear to assert any error with the finding in this respect.

He also argues that he has owned assets "in the past" and has only one judgment against him. But the court did not make any finding to the contrary; it only found that "he avoids claiming an interest in any corporations and business entities that he controls, or whose assets he controls, 'because of judgments.'" This is consistent with Richard's trial testimony.

Accordingly, we discern no clear error with any of the bankruptcy court's factual findings.

24

## C.    The bankruptcy court did not commit any errors of law.

Richard briefly raises a few purported errors of law. He provides no legal authority in support of his contentions and argues in conclusory fashion. Even construing his arguments liberally, we discern no error.

First, Richard argues that a California bankruptcy court cannot exercise any power over the assets of a Nevada corporation. He is wrong. The bankruptcy court has "exclusive jurisdiction . . . of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e).[13] Section 542(a) allows the trustee to seek turnover of property of the estate. Section 541(a) specifies that a debtor's bankruptcy estate is comprised of certain types of property, "wherever located and by whomever held[.]" There is no territorial limitation on the assets pulled into the bankruptcy estate. *See Official Committee of Creditors of Arcapita Bank B.S.C.(c) v. Bahrain Islamic Bank (In re Arcapita Bank B.S.C.(c))*, 575 B.R. 229, 251 (Bankr. S.D.N.Y. 2017) ("[T]he addition of the 'wherever located' language to the statute 'ma[de] clear that a trustee in bankruptcy is vested with the title of the bankrupt in property which is located without, as well as within, the United States.'" (quoting

---

[13] 28 U.S.C. § 1334 confers jurisdiction on the district court. 28 U.S.C. § 157 (in effect) authorizes each district court to delegate its bankruptcy jurisdiction to the bankruptcy court. The district court for the Central District of California has done so. *See* U.S. Dist. Ct. C.D. Cal. Gen. Order 13-05 (July 1, 2013), https://www.cacd.uscourts.gov/court-procedures/general-orders?field_gocategory_tid=102&=Apply.

H.R. Rep. No. 82-2320, at 15 (1952), *reprinted in* 1952 U.S.C.C.A.N. 1960, 1976)).

Second, he argues that the property at issue is not community property. His understanding is wrong. Under California law, there is a presumption that all property acquired during a marriage is community property. Cal. Fam. Code § 760. This presumption may be rebutted, such as in instances where property is traceable to one spouse's separate property. *See In re Jacobson*, 676 F.3d at 1201; Cal. Fam. Code § 770(a). However, Richard provided no evidence at trial to rebut the initial presumption. On the contrary, the Trustee provided evidence (largely through Richard's own testimony) that Richard and Kathleen received income from the Dwarfco Deed of Trust and that he controlled Dwarfco. The bankruptcy court did not err in concluding that the Dwarfco shares and Deed of Trust were community property.

Third, he contends that a trustee may only seize property within a year after her appointment to a case. No such time limit exists. Section 546 imposes a time limit, but that section applies only to the Trustee's avoiding powers. In any event, the Trustee commenced the adversary proceeding on October 11, 2013, within one year of the December 18, 2012 petition date.

## CONCLUSION

The bankruptcy court did not err. We AFFIRM.